Argued June 8, modified June 22, opinion corrected; petition for rehearing denied September 14, 1960

## BRADY ET UX *v.* RAY ET AL

353 P. 2d 554
355 P. 2d 258

*Thomas A. Huffman* argued the cause for appellants. On the brief were Schwenn, Brink & Huffman, Hillsboro.

*Warde H. Erwin* argued the cause for respondents. On the brief were Barzee, Leedy & Erwin, Portland.

Before McAllister, Chief Justice, and Rossman, Warner, Goodwin and Holman, Justices.

HOLMAN, J. (Pro Tempore)

On or about September 15, 1957, plaintiffs Brady and defendants Ray and Zimmerdahl entered into an oral contract for plaintiffs to sell and defendants to buy certain timber on land owned by plaintiffs. The purchase price was $15,000, one quarter of which, $3,750, was paid at the time the oral agreement was made, and the balance was to be paid within a year in quarterly installments. Defendants had three years in which to cut the timber. The land on which the timber stood was landlocked by the holdings of the International Paper Co. The parties contemplated plaintiffs would deed the fee in the land to International, subject to defendants' right to cut the timber. In return therefor plaintiffs would receive a right of way for defendants across International's land for the purpose of allowing defendants access to set up a mill in the timber they were purchasing. This right of way was to be furnished by plaintiffs to defendants. Lest there be any misunderstanding as to who was to furnish the right of way and because it is important, we will quote from plaintiff Dane Brady's testimony.

"A Now he says that I have changed that around. Now when I was out there just before November I told him and Mr. Zimmerdahl that I

would—to simplify matters that I would deed the property to them and they go and get their own right of way; we would have our contract made up and I would deed the property to them and they go and get their own right of way since Mr. Ray knew that the right of way could be obtained. And Mr. Ray said, 'No, I would just as soon you let it go just like it is, like we agreed on; that's the way we'll have it.'

"Q Did you agree to that, then?

"A Yes. If that's the way he wanted it.

"Q So you still had the same agreement; is that correct?

"A The same agreement as it originally was."

The parties further agreed that they would go to a scrivener and have the contract reduced to writing. Thereafter the defendant Ray went to International to inquire about the right of way and found that one was available but was told that International wanted to deal directly with the plaintiffs concerning it. Several times plaintiffs suggested to defendants that they go have the contract drawn, and defendants did not refuse but presented reasons why it was not convenient for them to go at that particular time.

In January, 1958, plaintiff Dane Brady went to a lawyer and had a contract drawn for the parties' signatures. The only parts thereof concerning defendants' right to enter the property are as follows:

"The Seller does hereby agree to sell and the Purchaser does hereby agree to purchase all the timber now lying, standing or being upon the following described real property, situate in Tillamook County, Oregon, to-wit:

"SE¼ of the SW¼ of Section 5, Township 3 North Range 6 West, Will. Mer., Tillamook County, Oregon

together with the right to enter upon said land

and cut and remove therefrom all of said timber at any time within three (3) years from date hereof.

"*   *   *   *   *

"It is further understood and agreed that this agreement is made subject to the terms and provisions of that certain agreement made and entered into between the International Paper Company and the seller, wherein the title to said real property will be transferred to said International Paper Company, subject to the rights of the purchaser herein to cut and remove said timber, as herein provided."

The defendants refused to sign the contract because they claimed they wanted to make other arrangements for payment and because the contract did not provide for any right of way over International's land. Defendants then asked for the return of their money and said they wanted to call the whole thing off.

Plaintiffs immediately, on January 27, 1958, brought this suit for specific performance of the agreement. Defendants counter-claimed for the $3,750 down payment. The defendants contended the contract was unenforceable because of the statute of frauds. The plaintiffs contended the defendants could not take advantage of the bar of the statute of frauds and at the same time ask for their money back. The trial court sustained both the contentions and denied both parties relief. The defendants appeal from the court's denial of a decree for the return of the money. Plaintiffs did not appeal.

The law is not seriously in dispute. It is set forth in 49 Am Jur 868, Statute of Frauds § 563, as follows:

"3. Recovery of Payments Advanced

"The determining factor in an action by the purchaser under an unenforceable oral contract for

the sale of land for the recovery of purchase money paid under that contract is at whose door lies the cause for the failure to carry out the contract. While, as a general rule, if the vendor is ready, willing, and able to carry out the contract on his part, the vendee cannot by repudiating the contract recover purchase money which he has advanced, it is settled practically without dispute that the purchaser of land or an interest therein under a contract which does not satisfy the statute of frauds may recover, as upon an implied promise, the amount which he has paid as a deposit, or upon the purchase price, where the vendor, without fault on the part of the vendee, is unable or refuses to perform the contract by conveying such title or interest as the contract calls for."

Oregon cases on the point are *Helgeson v. Northwestern Trust Co.*, 103 Or 1, 203 P 586, and *Lanham v. Reiman*, 177 Or 193, 160 P2d 318.

It is clear that if the plaintiffs were both willing and able to perform the oral contract, defendants cannot recover their down payment. However, at no time, at the proffering of the written contract or at the time of trial, was a right of way in existence. Plaintiff Dane Brady testified as follows:

"Q Now the last negotiations you had, as I understand it, was that meeting in January there at the mill site, as far as the sale of the timber was concerned.

"A Yes.

"Q That was the last effort to consummate the oral agreement?

"A Yes.

"Q Now at that time, Mr. Brady, was there in existence a written right of way agreement providing a means of access to and egress from that timber for Ray and Zimmerdahl?

"A No. There was no written agreement other than just Mr. Anderson's word and mine.

"Q Has any written agreement ever been prepared from International Paper or from you and Mrs. Brady, either one, to Ray and Zimmerdahl providing them with the means of access to or egress from that 40 acre tract of timber?

"A Haven't prepared anything to Ray and Zimmerdahl.

"* * * * *

"Q Mr. Brady, the principle bone of contention so far as you on the one hand and the Ray-Zimmerdahl partnership on the other, as evidenced by the testimony so far today seems to resolve down to this right of way agreement. Let me ask you this just point-blank: Have you ever secured such an agreement from International Paper Company either to yourself or to the partnership of Ray and Zimmerdahl?

"A No written agreement to right of way other than a letter I have had from the attorneys which was given to me by Mr. Anderson and they specified several things that he—

"Q Just a minute. Just a minute. You have answered the question and the answer is no, you have never received a written agreement?

"A No."

Plaintiffs were never able to perform the contract because they had no right of way to give defendants. They were ready, able and willing to sign a contract, but in it they were unable to give defendants the right of way across International's land.

Defendants had a right to know what strings or qualifications were going to be attached to the grant of the right of way by International. Apparently defendants' refusal to sign the written agreement profferred by plaintiffs and to otherwise perform the agreement was well-founded. Plaintiff Dane Brady testified that after defendants' refusal to sign the writ-

ten agreement he presented to them and defendants' request for the return of the money, he went to International and had them draft a right of way agreement. Mr. Brink, defendants' attorney, was called as a witness by the plaintiffs and testified he had gone to International's office and examined the agreement. His testimony concerning it was as follows:

"MR. BRINK: I examined this document for the purpose of determining basically who had talked to Mr. Anderson about the procuring of the circumstances. The document itself is in form, partially printed and partially typewritten, and it is labeled—my recollection is hazy—it's either a timber permit or a road permit. It is to Mr. and Mrs. Brady in conjunction with a warranty deed —all of these documents unsigned—from International Paper. The provisos therein being that the grantee or permittee do certain things and one of the, the one I was particularly interested in, was that the permittee maintain at all times a comprehensive liability policy insuring the interests of International Paper relative to personal injury, bodily damage, collision coverage, and so on, from limits of $100,000 to $300,000; to maintain certain gates specified therein, do maintenance work on the roads to the satisfaction and under the supervisory personnel of International Paper, and to maintain the road in certain conditions, not clutter up the culverts, and things of that kind. The thing I was primarily interested in was whether or not the document was signed, who the parties were, and this provision about maintenance and insurance."

Plaintiffs seem to feel it was defendants' duty to help them negotiate the right of way. This was not so under their oral agreement. Perhaps it was as the trial judge thought, that defendants were using the lack of right of way merely as a convenient excuse not to do that which they did not want to do anyway.

So long as defendants were within their legal right in insisting they be furnished with a right of way across International's land it does not make any difference what their real motives were in so insisting. Defendants would have been foolhardy to have paid the money or have signed the contract obligating them to pay the money when they did not know for sure the right of way would be forthcoming or what restrictions and requirements International would attach to the use of their property.

There is no evidence that any documents were ever presented to defendants showing them exactly what International would do. The situation is illustrated by the following quotation from *Helgeson v. Northwestern Trust Co.*, supra, at p 8:

> "* * * The statement that a road was to be built within two months, was no more a mere promise to do something in the future, than the promise, if there was one, that defendants would convey the land when the purchase price had been paid. The plaintiff was buying and paying not only for the land but for land which the defendants agreed should be accommodated with a road within two months, a valuable appurtenance to an otherwise comparatively worthless tract of brush and stumps. Up to June, 1920, when this case was tried, defendants had not built a road, and to compel plaintiff to lose the money he has already paid, or to require him to pay the other installments and await the pleasure of defendants as to building the road they agreed to build within two months from April 29, 1919, would be grossly unjust."

The inherent value of the statute of frauds will never be better illustrated. It may be there was never any oral agreement because of the indefiniteness as

to what type of access would be furnished defendants. However this may be, it would not change the result. Defendants would still be entitled to the recovery of their money.

The decree of the trial court will be modified to provide for the return of defendants' down payment to them by plaintiffs, without interest and without costs to any party, in this court or in the court below.

ON REHEARING

Warde H. Erwin, Portland for the petition.

HOLMAN, J. (Pro Tempore)

Plaintiffs in their petition for rehearing state as follows:

"On oral argument, plaintiffs called the court's attention to the distinction between a cause for *specific performance of a contract to reduce the oral agreement of the parties to writing*' and '*a suit for specific performance of an oral contract to convey real estate.*'

"In view of this appellate court's decision, the distinction becomes important because it bears on the question of whether the court was correct in holding that plaintiffs and not defendants were the defaulting party."

They again state in their petition as follows:

"I repeat plaintiffs' suit (if the court would just examine the pleadings) was to require the defendants to reduce their oral agreement to writing —in other words to comply with the statute. It was not to enforce an oral contract for the sale of land."

Despite these statements the prayer of plaintiffs' complaint requests as follows:

"1. Requiring defendants to execute an agreement in writing * * *

"2. Requiring plaintiffs to execute a deed of the land * * *

"3. Ordering payment of all sums due under said agreement * * *"

Plaintiffs thus assert the novel idea that if one of the provisions of an oral contract, which would normally be within the statute of frauds, is to subsequently reduce the contract to writing, all one has to do to avoid the statute is to first request the contract

be reduced to writing and then ask its performance. The statute of frauds does not rest upon such an unsubstantial footing.

Plaintiffs assert that it was defendants' fault the contract was not reduced to writing and thus it was defendants' fault that the contract was not performed. We will presume it was defendants' fault the contract was not reduced to writing. The thing that determines whether defendants are entitled to the return of their down payment is at whose door lies the fault for non-performance. Performance means the carrying out of the actual purpose for which the contract was made. The parties could perform the contract even though it was not reduced to writing. The thing that made it impossible of performance was lack of access. We disagree with plaintiffs' contention that there was access.

In their petition for rehearing plaintiffs have called the court's attention to an obvious error in the original opinion. It stated that a written contract with International for the right-of-way was necessary for defendants' protection before defendants entered into a written contract with plaintiffs. This, of course, is not so, as the parties could have made a written contract requiring the plaintiff to furnish the right-of-way as a condition precedent to defendants' performance. This, however, in no way affects the basic premises on which the case was decided, i.e., the contract was never capable of performance because of lack of access. With the above correction we adhere to the original opinion and the petition for rehearing is denied.