Argued January 12, affirmed June 6, 1978

# STEEL PRODUCTS COMPANY OF OREGON, INC., *Respondent,*
*v.*
# FMD CORPORATION, *Appellant.*
## (No. 418-360, SC 25047)
### 579 P2d 855

──────────

Michael D. Williams, of Williams, Stark, Heifield, Norville & Griffin, Portland, argued the cause and filed briefs for the appellant.

Bert Joachims, of Klosterman & Joachims, Portland, argued the cause and filed a brief for the respondent.

Before Denecke, Chief Justice, Holman and Howell, Justices, and Gillette, Justice Pro Tempore.

GILLETTE, J., Pro Tempore.

**GILLETTE, J.**

Plaintiff brought this action at law to recover a deposit of $5,000 paid to defendant in conjunction with an oral agreement for the sale of land. Plaintiff contends that it gave defendant the $5,000 check to be held until a formal written agreement for the purchase of land was consented to by all contracting parties. Defendant, on the other hand, contends that the $5,000 was given as a part payment on an already finalized parol agreement to sell land, and further contends that by reason of plaintiff's breach of the parol agreement, defendant is entitled to retain the $5,000 and to be reimbursed $11,040 for damages it suffered when the property was subsequently sold at a price lower than that price upon which plaintiff and defendant had orally agreed.

The trial judge, sitting without a jury, held that plaintiff had sustained its burden of proof, defendant failed to prove its counterclaim, and that defendant was obligated to return the $5,000 to plaintiff. Specifically, the trial judge found that the $5,000 check was to be held until a formal agreement was entered into and consented to by all parties, and that the parties never did agree to all the essential terms of the sale, but the defendant negotiated the check. We affirm.

The evidence, viewed in the light most favorable to plaintiff, indicates the following: In July, 1974, William LaGrand, president of plaintiff corporation, and Mitchell Drake, vice president of defendant corporation, met and discussed a possible sale of defendant's parcel of land to plaintiff. At that time, the parties orally agreed to the sale and settled on a purchase price of $90,000 cash. The parties intended that the purchase would be a joint venture between plaintiff corporation and a second corporation, LaGrand Industrial, with the possibility of a third investor.

Thereafter, Drake and LaGrand met frequently and informally and discussed the property. Owing to LaGrand's remarks to Drake about problems in the

steel market, Drake became concerned about plaintiff's ability to come up with the $90,000 purchase price and requested an indication of plaintiff's good faith.

On September 20, 1974, LaGrand went to Drake's office and wrote a check to defendant for $5,000. Drake testified that he told LaGrand he would hold the check until closing at which time it would be transferred to the escrow agent along with escrow instructions.

Other details were also discussed. LaGrand advised Drake that the sole purchaser and contracting party would be plaintiff. The parties agreed on a deferred payment schedule for the purchase price, calling for $28,000 to be paid at the closing in October, 1974, with the balance of $57,000 to be paid by a promissory note secured by a mortgage due in Feburary, 1975. LaGrand also informed Drake that he was concerned about the possible existence of a water problem and that he would want to get the approval of an engineer before going ahead with the sale. Drake advised plaintiff that he might attempt to arrange an exchange of property which would reduce or postpone defendant's tax liability. He assured LaGrand, however, that if it worked out, the exchange would not involve any additional liability on plaintiff's part.

Three drafts of the contract were drawn up by defendant's lawyer, only the last of which was shown to plaintiff. The proposed written contract as delivered to plaintiff set out a complicated exchange involving five parties and three pieces of real property. Under the contract, plaintiff was to acquire a parcel of land, parcel B, from a third corporation, Bevest, Inc. (Tr 26). Plaintiff would then be obligated to contract with Donald M. Drake & Co., a subsidiary of defendant corporation, for the removal of certain improvements from parcel C, owned by Union Oil Company, to parcel B. If the removal of the items from parcel C was performed to the satisfaction of Union Oil, Union Oil

would exchange parcel C for parcel B, and plaintiff could then exchange parcel C for parcel A—the land which it originally sought to purchase. In addition to significantly altering the number of acts plaintiff would have to perform, the proposed contract changed the method of financing from a note and mortgage to a trust deed, a method which Drake admitted is less favorable to the buyer.

Viewing the proposed agreement as "too harsh" and inconsistent with the parties' prior oral agreement, LaGrand refused to sign the contract, returned it to defendant and requested the return of plaintiff's $5,000 check. Defendant refused and this lawsuit followed.

On appeal defendant first argues that the trial court erred in finding that there was no meeting of the minds on all the essential terms of the oral agreement. Defendant insists that the agreement was complete as of July 16, 1974, when the parties first agreed to the sale, and characterizes the $5,000 check, delivered to defendant by plaintiff, as a part payment on the already finalized agreement.

We think the trial judge was justified in finding otherwise. As of July 16, 1974, all that had been definitely determined was plaintiff's and defendant's willingness to enter into the sale transaction, the identity of the property and the purchase price. Other material aspects of the arrangement had not yet been settled. LaGrand had not resolved the water problem, nor even determined who the additional purchasers might be. Neither had the parties settled on the terms or time schedule of the payment nor on the collateral or security aspects of the deal.

That the terms of the agreement were not finalized and assented to by both parties is evidenced by the variance between the parties' discussions and the proposed written agreement drawn up by defendant. Defendant denies that the proposed written contract materially altered plaintiff's obligations from the

[ 517 ]

terms of the oral agreement. Drake points to the fact that he orally assured LaGrand that plaintiff's liability would be limited to $90,000. Paragraph 9 provides:

> "In the event, for any reason, F.M.D. and/or Drake is unable to arrange for the necessary permits within the period specified in the Union Oil exchange agreement and/or the other documents, and at any later date should be unable to complete the exchange between Steel and Union of the properties described on Exhibits B and C, then and in such event F.M.D. agrees that if Steel has placed in the escrow the funds necessary to complete the aforesaid arrangements, that the instructions as prepared will authorize the release of the funds to F.M.D. upon F.M.D. and Steel informing the escrow agent that it is impossible to comply with the required time with the Union Oil exchange and/or if, it should be otherwise impossible for F.M.D. to complete the exchange as herein contemplated."

Drake admits this "is an awkward paragraph," but interprets it to mean that in the event the exchange arrangements were frustrated, the transaction would revert to the original $90,000 cash agreement. We disagree. Whatever else it may be, this paragraph is not a reaffirmation of the original parol understanding of the parties. In spite of the language of paragraph 9 and Drake's oral assurances, we think LaGrand was justified in concluding that the written agreement imposed liabilities beyond their oral agreement and justified in his refusal to sign the contract.

■ Defendant insists, however, that the real reason plaintiff refused to proceed with the sale is because of a downturn in the steel market. As long as plaintiff had a legal right to refuse to sign the contract, it does not make any difference what its real motives were. *See, Brady et ux v. Ray et al.,* 223 Or 613, 620, 353 P2d 554, 355 P2d 258 (1960).

■■ In sum, the evidence indicates that the parties never reached a sufficiently definite agreement on all the terms of the sale. As stated in *Kretz et ux v. Howard et al,* 220 Or 73, 346 P2d 93 (1960),

"* * * Discussions, no matter how adequate, do not necessarily produce contractual relationships, but normally no contractual relationship is brought about as the result of discussion unless it is carried on to such an extent that the minds of the parties meet upon all the essential terms of the proposed venture." 220 Or at 83, quoting *Reed et al v. Montgomery,* 180 Or 196, 175 P2d 986 (1947).

■ Defendant's second assignment of error is that the trial court erred in concluding that defendant failed to prove its counterclaim. Defendant had counterclaimed for damages which it alleged it sustained by reason of plaintiff's refusal to complete the sale of the property. Defendant alleged that "in attempting to mitigate its damages," it subsequently sold the property for a lower price at a loss of $11,040. Defendant's counterclaim is premised on the existence of a finalized agreement, between the parties. There being no such agreement, defendant was not entitled to prevail upon its counterclaim.

■ Defendant's third assignment of error is that the court erred in denying its motion for new trial. The denial of a motion for a new trial cannot be assigned as error on appeal. *Clinton v. Thornhill,* 280 Or 489, 492, 571 P2d 898 (1977); *Martin Engineering Co., Inc. v. Opton,* 277 Or 291, 295, 560 P2d 617 (1977).

■ In this assignment of error, however, defendant reveals that its real objection is that plaintiff "failed to prove the critical allegation of its complaint—the failure of an express condition precedent." (Plaintiff had alleged that the agreement was subject to the written approval of LaGrand Industrial Supply Company, which had not been given.) This is a false issue. Under the pleadings, the real issue was whether there was a binding contract between the parties, as defendant had alleged in its answer and counterclaim. Because, as the trial judge found, there was no binding contract, the failure of plaintiff to prove the specific allegation concerning prior approval by LaGrand Industrial Supply Company is immaterial.

[ 519 ]

Plaintiff asserted and the trial judge found that the $5,000 check was to be held until such time as a formal written agreement could be entered into and consented to by all parties. As this never came to pass, plaintiff is entitled to have his $5,000 check returned.

Affirmed.