Robert BARMAN, Plaintiff—Appellee,

v.

**UNION OIL COMPANY OF CALIFORNIA, a California corporation, aka Unocal, Defendant—Appellant,**

and

**Tosco Corporation, a Nevada corporation, Defendant.**

Robert BARMAN, Plaintiff—Appellant,

v.

**UNION OIL COMPANY OF CALIFORNIA, a California corporation, aka Unocal; and Tosco Corporation, a Nevada corporation, Defendants—Appellees.**

No. 01–35497, 01–35615.
D.C. No. CV–97–00563–AS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 2002.

Decided Sept. 26, 2002.

Before T.G. NELSON, GRABER, and FISHER, Circuit Judges.

### MEMORANDUM *

This diversity action arises out of Plaintiff Robert Barman's efforts to buy four gasoline stations from Defendant Union Oil Company of California (Unocal) and to become a marketer of Unocal-branded gasoline. Plaintiff alleges that the parties entered into a Real Property/Marketer Agreement (Agreement) for those purposes, but that Unocal breached that Agreement. He also alleges tort and contract claims and violations of the Petroleum Marketing Practices Act (PMPA) arising from Unocal's sale of its interests in Oregon to Defendant Tosco Corporation (Tosco). A jury assessed Plaintiff's damages at $7,125,000. Plaintiff and Unocal both appeal a number of issues. In resolving them, we will state only those facts necessary to explain our reasons, because the parties are familiar with the extensive record.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

## A. Enforceability of the Agreement Between Plaintiff and Unocal

Unocal argues that there is a genuine issue of material fact as to whether it entered into an enforceable contract with Plaintiff. It contends that the parties failed to agree on material terms and that Oregon's Statute of Frauds renders unenforceable any oral agreement between the parties. The district court disagreed, holding that the parties had reached agreement on all material terms and, thus, granted Plaintiff's motion for partial summary adjudication as to the existence of an agreement. The court also granted summary judgment on the Statute of Frauds question, holding that Unocal was estopped from asserting it.

### 1. Agreement on all Material Terms

■ To create a legally binding contract, the parties must reach an agreement on all essential terms. *Steel Prods. Co. of Or. v. FMD Corp.*, 282 Or. 513, 579 P.2d 855, 857–58 (Or.1978). Under Oregon law, "what is material will depend on the nature of the parties' agreement, which depends on the particular circumstances of the property or the parties." *Povey v. Clow*, 146 Or.App. 760, 934 P.2d 528, 530 (1997).

The district court erred in holding as a matter of law that the division of responsibility for environmental remediation and the availability of consequential damages were not essential terms to these parties in their negotiations. Factual issues remain.

A contract clause concerning environmental liability can be a material term in a land-sale agreement. *Lang v. Or.-Idaho Annual Conference of United Methodist Church*, 173 Or.App. 389, 21 P.3d 1116, 1122 (2001). The parties knew that the real property in question was potentially contaminated, and there was evidence that the cleanup costs for the four sites could total as much as $4 million, when the sales price was only $1.3 million. Further, the parties negotiated extensively over the remediation terms for five months, far longer than the two weeks it took them to agree on the other terms of the Agreement. In August 1996, Unocal's representative, Frank Blum, told Plaintiff that this "was probably the most complex issue [the parties] would face together." In October, the parties discussed the controversial remediation terms in a telephone conference, after which Unocal sent Plaintiff a proposed draft, but Plaintiff did not agree to its terms. In December, Blum reported that he had spoken to Plaintiff and that the issue of site contamination remained "pending." In January 1997, Plaintiff flew to Costa Mesa, California, to discuss, again, the unresolved remediation terms. A jury would be entitled to infer from this course of conduct and from the circumstances that the remediation terms were material and that the parties reached no agreement on those terms.

With respect to consequential damages, Unocal argues that Plaintiff agreed not to seek consequential damages for lost profits arising from his inability to purchase and remodel the four stations. Unocal cites provisions in the draft Real Property Sale Agreement and the draft Remediation and Indemnity Agreement, waiving the right to seek such damages, and points out that Plaintiff did not object to those terms. Plaintiff responds by arguing (among other things) that the parties reached no agreement with respect to Plaintiff's waiver of consequential damages.

There is evidence that this possibly unresolved issue was material. There is evidence that Unocal uniformly required a waiver of consequential damages in connection with the sale of station properties where Unocal was continuing to brand a station business and that Unocal's manage-

ment saw such waiver terms as "non-negotiable." The materiality of these provisions to Plaintiff is demonstrated by the magnitude of the jury's award; potential consequential damages were very large.

In short, the district court erred in granting summary judgment on the question of contract formation. Accordingly, we reverse and remand. Below, we reach issues that are independent of the claims based on the alleged contract and issues that are likely to arise on remand.

### 2. *Statute of Frauds*

■ Under Oregon law, the Statute of Frauds applies to the alleged Agreement between Plaintiff and Unocal because the marketer aspect of the parties' proposed deal could not be performed within a year, Or.Rev.Stat. § 41.580(1)(a), and because the alleged Agreement is one for the sale of real property, Or.Rev.Stat. § 41.580(1)(e). The Statute of Frauds generally renders a contract unenforceable unless the party seeking enforcement can produce a writing or series of writings identifying the contracting parties, subject matter, consideration, and essential terms of the agreement, signed by the party to be charged. *Coast Bus. Brokers, Inc. v. Hickman*, 239 Or. 121, 396 P.2d 756, 758 (1964).

We agree with the district court that, even if the parties' writings do not satisfy the Statute of Frauds, Unocal is estopped from relying on the Statute as a defense. Generally, in order to avoid a Statute of Frauds defense through promissory estoppel, a party must prove: "1) actual reliance on a promise, 2) a definite and substantial change of position occasioned by the promise and 3) foreseeability to the promisor, as a reasonable person, that the promise would induce conduct of the kind that occurred." *Potter v. Hatter Farms, Inc.*, 56 Or.App. 254, 641 P.2d 628, 633 (1982) (citing *Schafer v. Fraser*, 206 Or. 446, 290

P.2d 190, 202 (1955)). Plaintiff offered evidence in support of each of these elements: In actual reliance on Unocal's promise to fulfill the terms of the Agreement, he declined an opportunity to negotiate a lucrative rebranding deal with Chevron. This was a definite and substantial change in position occasioned by the promise, as there are now two competitors to his Hood River and Cornelius stations who have branded sites in direct competition to his. Finally, his reliance was foreseeable to Unocal because it had notice that Plaintiff's rebranding negotiations with Chevron were dependent on whether Unocal would agree to sell the four leased stations.

Accordingly, we affirm the district court's grant of partial summary judgment on Plaintiff's promissory estoppel defense. If, on remand, a finder of fact decides that the parties entered into an enforceable contract, the Statute of Frauds is not available to Unocal as a defense.

### B. *Effect of the Petroleum Marketing Practices Act*

If Plaintiff and Unocal did not enter into an enforceable contract, Plaintiff's PMPA claims are unavailing. In the absence of the Agreement, Plaintiff's franchise with respect to the four stations consisted of a *lease* arrangement, and Tosco offered Plaintiff a comparable, nondiscriminatory lease arrangement.

If, however, a finder of fact were to decide that the Agreement is enforceable, further analysis of the PMPA claims is required.

### 1. *Unocal's Alleged Violation of the PMPA*

■ The PMPA provides " 'a single, uniform set of rules governing the grounds for termination and non-renewal of motor fuel marketing franchises.' " *Unocal Corp. v. Kaabipour*, 177 F.3d 755, 762 (9th Cir.1999) (quoting S.Rep. No. 95–731, at

18–19 (1978), *reprinted in* 1978 U.S.C.C.A.N. 873, 877). Before Tosco bought Unocal's assets in Oregon, Plaintiff and Unocal had a franchise relationship. Accordingly, Unocal's termination of Plaintiff's franchise is governed by the PMPA.

Unocal asserts that its termination of Plaintiff's franchise was permissible under § 2802(b)(2)(E) of the PMPA, which provides that a franchisor may terminate a franchise upon "a determination made by the franchisor in good faith and in the normal course of business to withdraw from the marketing of motor fuel through retail outlets in the relevant geographic market area in which the marketing premises are located." 15 U.S.C. § 2802(b)(2)(E). We agree. On this record, Unocal's withdrawal from the Oregon market was in good faith and in the normal course of business. *See Kaabipour,* 177 F.3d at 763–68 (analyzing the same market withdrawal and finding no evidence of bad faith).

■ Citing 15 U.S.C. § 2802(b)(2)(E)(iii)(II), Plaintiff argues that Unocal's withdrawal violated the PMPA because he occupies "leased marketing premises" under the Agreement.[1] Plaintiff argues that Unocal violated the cited provision because, after it sold its interests to Tosco and withdrew from the Oregon market, Tosco failed to offer Plaintiff a *marketer* agreement comparable to those then held by or offered to other Tosco marketers.

Plaintiff offers two justifications for his argument that he occupies "leased marketing premises."[2] First, he asserts that a franchisee can own premises, lease them to the franchisor, and lease them back from the franchisor. Assuming, without deciding, that such an arrangement falls within the PMPA's definition of leased marketing premises, the record contains no evidence that the parties intended to enter into a lease/lease-back relationship with respect to the four stations that Plaintiff was to acquire under the Agreement. Without more, the fact that Plaintiff had one such arrangement in a different location suggests nothing about what the parties contemplated for these four stations.

Second, Plaintiff argues that the premises of the four stations would be "controlled by" Unocal. Again, the facts do not support a "control" theory. The mere fact that a franchisor sets standards for a franchisee's level of maintenance does not establish the franchisor's "control" of the premises.

### 2. *Limitation of Plaintiff's Damages Against Unocal Under the PMPA*[3]

■ Unocal argues that, assuming that the Agreement is enforceable, the PMPA bars any marketer contract damages incurred by Plaintiff after June 30, 1997.[4]

---

1. The PMPA provides that, "in the case of leased marketing premises," a franchisor may legally "withdraw from the marketing of motor fuel through retail outlets in the relevant geographic market area" if the person purchasing the franchisor's interest "offers, in good faith, a franchise to the franchisee on terms and conditions which are not discriminatory to the franchisee as compared to franchises then currently being offered by such other person or franchises then in effect and with respect to which such other person is the franchisor." 15 U.S.C. § 2802(b)(2)(E).

2. As defined in the PMPA, " 'leased marketing premises' means marketing premises owned, leased, or in any way controlled by a franchisor and which the franchisee is authorized or permitted, under the franchise, to employ in connection with the sale, consignment, or distribution of motor fuel." 15 U.S.C. § 2801(9).

3. This section of the disposition applies equally to Tosco if it assumed Unocal's duty to perform the Agreement.

4. Unocal limits this argument to damages arising from Unocal's alleged breach of its promise to make Plaintiff a marketer. Thus, it concedes that, "[i]f the Real Property Sale

We agree. The Unocal–Tosco Contract required Unocal to terminate Plaintiff's marketer franchise on that date. Such termination was permitted by the PMPA and, therefore, Plaintiff suffered no cognizable damages after the date of the termination.

As discussed above, if a fact-finder decides that the Agreement is enforceable, Plaintiff did not occupy "leased marketing premises." Accordingly, because Unocal engaged in a good faith market withdrawal, the PMPA does not require it to ensure that Plaintiff was offered a comparable nondiscriminatory franchise by Tosco. *Compare* 15 U.S.C. § 2802(b)(2)(E) (general market withdrawal provision) *with* 15 U.S.C. § 2802(b)(2)(E)(iii)(II) (leased marketing premises withdrawal provision).

Thus, the district court erred in holding that the PMPA did not limit Plaintiff's damages. On remand, the court should instruct the jury to disregard any marketer damages incurred after June 30, 1997.

## C. *Unocal's Motion for a New Trial or Remittitur*

Unocal moved for a new trial or remittitur on several grounds. The district court denied the motion, and Unocal challenges that ruling on appeal. We need not reach these issues because we already have held that a new trial is required, and the issues briefed here are not likely to arise on remand.

## D. *Tosco's Rule 50 Motion for Judgment as a Matter of Law*

■ When Tosco purchased Unocal's assets, it agreed to assume all of Unocal's contracts, along with any post-closing liability or obligations associated with Unocal's assets and contracts in Oregon. Relying on the contract between Tosco and Unocal, Plaintiff argues that Tosco was bound by the Agreement and that it breached that Agreement by failing to make him a marketer. The district court rejected this argument and granted Tosco's motion for judgment as a matter of law on the question of Tosco's liability for breach of contract. Plaintiff argues that the court erred because the evidence would have allowed a jury to conclude that Tosco assumed the Agreement. We agree in the event that a finder of fact were to decide that the Agreement is enforceable.

Whether Tosco assumed responsibility for the Agreement depends on the terms of the Tosco–Unocal Contract. In Oregon, the first step of contract interpretation is examination of "the text of the disputed provision, in the context of the document as a whole." *Yogman v. Parrott,* 325 Or. 358, 937 P.2d 1019, 1021 (1997). If the contract is ambiguous, the next step is to examine "extrinsic evidence of the contracting parties' intent." *Id.* at 1022.

Tosco rightly notes that, collectively, several provisions of the Tosco–Unocal Contract absolve Tosco from responsibility for liability arising from events that took place *before* the closing of the Tosco–Unocal Contract. Reasoning from this principle, Tosco argues that it is not responsible for any contract damages because such damages arise from events taking place before closing (namely, Unocal's breach, or repudiation, of the Agreement).

However, Plaintiff seeks damages against Tosco only for failing to honor the Agreement *after* the closing of Tosco's deal with Unocal. Plaintiff presented evidence sufficient to allow a jury to find that Unocal did not unequivocally repudiate the Agreement prior to the closing of the Tosco–Unocal Contract but, instead, that

Agreement is a separate contract from the marketer contract, [Plaintiff]'s compensatory damages for the real estate contract would not be barred by the June 30, 1997 market withdrawal."

Unocal assured Plaintiff that Tosco would close on the Agreement after Unocal's sale of its assets. There also was evidence that Tosco itself said it would accept all Unocal deals and honor all Unocal contracts. Further, Plaintiff asserts that he did not treat Unocal's supposed repudiation as a breach of the Agreement but, instead, continued to confirm with Unocal that Plaintiff and Unocal had a deal. The question whether a contract has been repudiated is a question of fact. *Minidoka Irrigation Dist. v. Dep't of Interior,* 154 F.3d 924, 927 (9th Cir.1998). Considering the evidence presented by Plaintiff that Unocal did not repudiate the contract and that Tosco agreed to honor all Unocal deals, the district court erred by refusing to allow the jury to consider this question.

If the finder of fact decides that Unocal and Plaintiff entered into a binding contract before the closing, it may also decide that Tosco is responsible for damages arising from its post-closing breach of (or failure to assume) the Agreement. The district court therefore erred in granting Tosco's motion for judgment as a matter of law.

### E. *Civil Conspiracy*

Plaintiff contends that Tosco conspired in Unocal's allegedly fraudulent delay of the Agreement's closing. The district court granted summary judgment in favor of Tosco on this claim, reasoning that Plaintiff "relates numerous allegations against Unocal, but does not provide any evidence that Tosco participated in a civil conspiracy."

Plaintiff alleges that Tosco did not wish to employ him as a marketer and that Unocal executives wanted to defer to Tosco's wishes. He also alleges that one executive who worked for both Unocal and Tosco may have talked to Tosco personnel about Plaintiff's deal and that, through these talks, Defendants conspired

to delay closure on the Agreement. Plaintiff provides no evidentiary support for those allegations, however. Accordingly, the district court did not err in granting summary judgment to Defendants on this claim.

### F. *Breach of Implied Duty of Good Faith and Fair Dealing*

■ Plaintiff alleges that Defendants intentionally delayed the closing of the Agreement (if there was one), thereby breaching the implied duty of good faith and fair dealing. The district court granted summary judgment for Defendants on this claim, holding that "this case revolves around [Plaintiff]'s allegations of a breach of the express provisions of a contract, thus the breach of an implied duty would not be applicable." Because the district court misapprehended Oregon law, we reverse as to Unocal.

It is true that the implied duty of good faith and fair dealing "does not vary the substantive terms of the bargain" by adding additional, implied terms to an express contract. *U.S. Nat'l Bank of Or. v. Boge,* 311 Or. 550, 814 P.2d 1082, 1092 (Or.1991). However, the duty does require parties to a contract to exercise good faith and fair dealing in the performance of their existing duties under the contract. Thus, Oregon courts have "sought through the good faith doctrine to effectuate the reasonable contractual expectations of the parties." *Best v. U.S. Nat'l Bank of Or.,* 303 Or. 557, 739 P.2d 554, 558 (Or.1987). In service of this goal, the duty "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Id.* at 557. As we have explained, Oregon law requires that, "[w]hen a party possesses discretion under the contract, the duty of good faith requires that party to exercise the discretion for purposes 'contemplated by the par-

ties." ' *Pride v. Exxon Corp.*, 911 F.2d 251, 256 (9th Cir.1990) (quoting *Best*, 739 P.2d at 558).

If Plaintiff's allegations of fraudulent delay in the closing are to be believed, Unocal was not faithful to "an agreed common purpose" or consistent "with the justified expectations of" Plaintiff. *Best*, 739 P.2d at 557. By delaying the closing to make it more likely that the closing would never take place, Unocal did not exercise its discretion under the Agreement for purposes contemplated by the parties. *Pride*, 911 F.2d at 256.

Thus, under Oregon law, Plaintiff's assertion that Unocal fraudulently delayed the Agreement's closing is cognizable as a claim for breach of the duty of good faith and fair dealing. The district court therefore erred in granting summary judgment to Defendant Unocal on this claim.

With respect to Plaintiff's good faith and fair dealing claim against Tosco, however, the district court did not err in granting summary judgment. As discussed above, there is no evidence in the record that Tosco conspired in Unocal's allegedly fraudulent delay of the Agreement's closing. Further, although a finder of fact could conclude that Tosco breached the Agreement, there is no evidence that Tosco exercised its discretion under the Agreement in a way that breached its duty of good faith and fair dealing. Accordingly, we affirm the district court's grant of summary judgment as to Defendant Tosco.

### G. Conclusion

The district court erred in granting summary judgment to Plaintiff on the question of contract formation, in holding that the PMPA does not limit Plaintiff's damages with respect to his alleged marketer contract, in granting Tosco's Rule 50 motion for judgment as a matter of law, and in granting summary judgment to Defendant Unocal on Plaintiff's claim for breach of the implied duty of good faith and fair dealing. In all other respects discussed above, the district court's rulings are affirmed.

AFFIRMED in part and REVERSED in part and REMANDED for further proceedings consistent with this disposition. The parties shall bear their own costs on appeal.